AMERICAN TRUCKING ASSOCIATIONS, Inc., et al. Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission et al., Defendants.

Civ. A. No. 3171–55.

United States District Court District of Columbia.

Jan. 11, 1956.

Roland Rice, Peter T. Beardsley, Fritz R. Kahn, Washington, D. C., for plaintiffs.

Clarence M. Mulholland, Edw. J. Hickey, Jr., Wm. G. Mahoney and James L. Highsaw, Jr., Washington, D. C., for intervening plaintiffs.

Stanley N. Barnes, Asst. Atty. Gen., Leo Rover, James E. Kilday, Washington, D. C., Chas. S. Sullivan, Jr., Arlington, Va., James Y. Piper, Samuel R. Howell, Washington, D. C., for defendants.

Arthur L. Winn, Jr., La Roe, Winn & Moerman, Washington, D. C., D. C. Nolan, Iowa City, Iowa, for intervening defendants.

Before PRETTYMAN, Circuit Judge, and PINE and HOLTZOFF, District Judges.

PRETTYMAN, Circuit Judge.

The Chicago, Rock Island and Pacific Railroad Company is a through trunk-line railroad operating, so far as is here pertinent, across the State of Iowa from Davenport to Council Bluffs. It owns a subsidiary, called herein "Motor Transit", which owns operating rights and property as a motor carrier on routes paralleling or stemming from the Railroad route. The motor carrier certificates have heretofore contained limitations requiring that the motor service be auxiliary or supplementary to the rail service, but those limitations were stayed and have never been enforced. The mo-

tor carrier applied for a certificate without the restrictions. The application was opposed by other motor carriers. After extensive proceedings the Interstate Commerce Commission granted the application, subject to the conditions that there might be attached such reasonable terms, conditions and limitations as the public convenience and necessity might require and that all contractual arrangements with the Railroad should be reported to the Commission and be subject to its revision. Petition for reconsideration having been denied, this action to set aside the order was brought by motor carriers operating in the same general area as Motor Transit.

The nub of the controversy is in two parts, (1) whether the Commission has power to grant a certificate to a motor carrier wholly owned by a railroad without a restriction that the service shall be auxiliary or supplementary to the railroad service and (2), if so, whether the findings of the Commission to the effect that the public convenience and necessity justified the grant in the present case were supported by evidence in the record.

Two sections of the Interstate Commerce Act, as now amended, are involved. Section 5(2) (b)[1] provides that, whenever a carrier by railroad, or its subsidiary, is an applicant for approval of a transaction involving a motor carrier, the Commission shall not approve unless it finds, *inter alia*, that the transaction will enable the carrier to use service by motor vehicle to public advantage in its operations. This section governs the acquisition of motor carriers by railroads. Section 207(a) of the Act[2] provides that a certificate shall be issued to any qualified applicant therefor if it is found, *inter alia*, that the proposed service is or will be required by the present or future public convenience and neces-

sity. This latter section, 207(a), does not contain the requirement which appears in the former section, 5(2) (b), that the proposed service must be used in the operation of the railroad if a railroad is the applicant. It is agreed that the requirement that the service be used in the operation of the railroad applicant means that the service must be auxiliary or supplementary to the rail service.

■ Plaintiffs say that the requirement which appears in Section 5(2) (b) must be read into Section 207(a) and therefore controls in the issuance of certificates where a railroad, or its subsidiary, is the applicant. The Commission says the requirement is notably omitted from the terms of Section 207 (a); that the policy, not the terms, of the requirement applies to the issuance of certificates under 207(a). It says a policy requirement is not so rigid as a flat requirement in terms but is flexible and permits a grant in exceptional circumstances where the Commission finds that the public interest, convenience and necessity require the grant.

We agree with the contention of the Commission in the foregoing respect. The case concerns the issuance of a certificate.[3] Certainly the terms of the requirement as to auxiliary and supplementary service do not appear in Section 207(a). It is equally certain that the policy of the requirement, being a basic policy in the statute, does apply. The difference between a rigid requirement and an applicable policy is one of flexibility and permits the Commission to be governed in exceptional circumstances by the needs of the public convenience and necessity.

■ This brings us to the second main part of the controversy. The traffic consists of intrastate traffic, rail originated traffic, and interstate "peddle" traffic.

1. Formerly Sec. 213(a) (1), amended Aug. 2, 1949, 63 Stat. 485, 49 U.S.C.A. § 5(2) (b).

2. As enacted Aug. 9, 1935, 49 Stat. 551, 49 U.S.C.A. § 307(a).

3. See Interstate Commerce Comm'n v. Parker, 1945, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051; United States v. Rock Island Co., 1951, 340 U.S. 419, 428, 431, 442, 71 S.Ct. 382, 95 L.Ed. 391; United States v. Texas & Pac. Co., 1951, 340 U.S. 450, 71 S.Ct. 422, 95 L.Ed. 409.

The rail originated traffic goes, through natural course of events, to Motor Transit. That service is largely auxiliary or supplementary to the train service and is not actually involved in the controversy. Certificates for the intrastate traffic are issued by the State of Iowa, and that State follows the usual rule of public utility regulation that where the business makes economically feasible only one carrier it will certificate only one. It has certificated Motor Transit for the intrastate traffic along the routes here involved, and so that traffic is not actually involved in the present controversy. The so-called interstate peddle operation is one in which the motor carrier, starting with a full truckload, moves interstate and distributes that load at various points of destination; or, in reverse, a truck picks up parts of loads at various points of origin and eventually transports interstate a full truckload. This is really the traffic which is involved in the pending case. The Commission found, in effect, that this peddle operation, standing alone, is not a profitable one and that the trend of motor carriers operating in Iowa has been to refrain from rendering this service; that the business communities along the routes need this sort of service; and that Motor Transit, already having rail originated and intrastate traffic, can readily render this additional service. As a matter of fact Motor Transit has operated since its first acquisition in 1938 without the restrictions here in issue. During that period it satisfactorily performed this particular service. Actually the result of sustaining the motor carriers' position would be a privilege to them of giving the service now rendered by Motor Transit if they so desire and refusing to give it when it is economically not feasible. That would not appear to serve the public interest.

· We think the position of the Commission is well taken on the evidence. Voluminous testimony was produced. The findings are extensive. The conclusion that the grant appears necessary in the public interest is well founded. Judgment will be rendered for the defendants.